# HARRISON WILLIAMS vs. THE STATE.

SUPREME COURT, TYLER TERM, 1883.

*Murder—Malice--Evidence.* See the opinion for evidence admitted upon a trial for murder which was objected to upon the ground that, tending to disclose another and a prior offense than that for which the accused was on trial, was inadmissable but which is held competent as tending to establish malice.

*Same—Case stated.* Before and at the time of the homicide, (on Monday) the defendant was shown to have worn clothes very much soiled. Over objections the State was permitted to prove that the defendant knowing he was being searched for by the officers, went to Henry Penn's house on the next night, broke open his trunk, and took therefrom a pair of pants, drawers and shirt. *Held,* under the circumstances of this case, the evidence was properly admitted. See the opinion *in extenso* on the question.

Appeal from Navarro County.

*H. W. Greer* for appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Opinion by Hurt, J.

Harrison Williams was tried and convicted for the murder of Ada Sallard, the jury finding him guilty of murder in the first degree with death as the penalty.

It appears that on the morning of the homicide, Emeline Jordan and Ada Williams (wife of the defendant) were on their their way to Corsicana to report defendant for beating his wife, Ada Williams, and that when they were near Sallard's house they saw Williams coming, and, as Emily says, hunting her and Ada Williams. And that when defendant caught up with them he "beat them." The deceased, Ada Sallard, being present witnessing the battery, told Williams that she was going to report him for it. Whereupon, Williams replied that "if you do, I knock your head off. I am tired of niggers reporting me, and I intend to kill the first nigger that does so." The deceased then left going towards town and that at about 9 o'clock of that morning Ada Sallard did make complaint before the justice, in which she charged defendant with an assault and battery upon his wife (Ada Williams). And it also appears by the other facts, beyond all question in a most brutal and fiendish manner, took the life of this woman, and that the only instigation thereto was from fiendish revenge, for thus reporting him for assault and battery upon his wife."

To the evidence of Emeline Jordan, defendant objected, and saved bills. Was this evidence competent? We are of the opinion that it was. It is insisted by the learned counsel for the defendant, that this evidence relating to the first assault upon his wife was calculated to prejudice the defendant. This may be true, but because evidence shows another offense it does not always follows that it is not admissable. This character of evidence, tending to show another offense, is frequently interwoven with facts which are clearly admissable, and should not be rejected because it developes some other offense. In the case at bar, it was of the greatest importance for the state to show malice. This the State had a right to do and in the clearest light and in such manner that there could be no mistake in its origin, its quantity, and its influence upon the defendant.

Before and at the time of the homicide the defendant wore a suit of clothes which were very much soiled—in language of the defendant "very dirty." On Tuesday night after the murder, the defendant went to Henry Penn's, and while Penn was asleep, broke open his trunk and took therefrom a pair of pants and a shirt, and left before day, leaving his own soiled clothes at Penn's. Defendant was aware of the fact that he was suspected and that the officers were on the hunt for him.

Counsel for defendant objected to this evidence, and reserved his bill. Were these facts admisible, ? Under the circumstances of the case, we think they were clearly so. Here again another offense is shown. While this is true, still these facts evidently prove that defendent was endeavoring to so disguise himself as to be able to elude his percuers and make good his escape. This certainly was his purpose or he never would have left his clothing at the very spot of the theft—thus furnishing indisputable evidence of his guilt.

We have examined all the grounds for reversal contained in the assignment of errors. In fact we have very carefully examined this record independent of the assignment of errors, and can find no cause why the judgment should be reversed. We have had some experience with murder trials, and can call to mind the evidence in quite a number of cases, but we must be permitted to say that none of these cases can furnish a parallel to the one disclosed in this record.

This was a terrible crime, and committed in such a brutal and fiendish manner as to make humanity shudder.

This prosecution was ably conducted; the facts and circumstances being so marshalled that the guilt of the defendant is made to appear so clearly as to place it beyond all doubt.

The judgment is affirmed.